IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  11-cv-02280-WYD

RANDLE S. CRABILL,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for Disability Insurance Benefits ["DIB"] and Supplemental Security Income Benefits ["SSI"].  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff was 42 years old on his alleged disability onset date.  (Transcript ["Tr."] 113.)  He received a GED (*id.* 29), and worked as a fiberglass mold maker and a janitor prior to September 7, 2006, his alleged onset date.  (*Id.* 118-119.)  Plaintiff alleged disability due to "Ac separation arthritis bursitis of left shoulder."  (*Id.* 118.)

Plaintiff applied for Social Security benefits under Titles II and XVI of the Social Security Act ["the Act"], alleging disability beginning on September 7, 2006.  (Tr. 272-279.)  His applications were denied (*id.* 43-44), and he requested a hearing before an ALJ.  (*Id.* 50.)  A hearing was held on December 3, 2009, at which Plaintiff and a

vocational expert testified. (*Id.* 27-40.) On January 20, 2010, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. (*Id.* 10-21.)

More specifically, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 7, 2006, the alleged onset date. (Tr. 12.) At step two, the ALJ determined that Plaintiff has a severe left shoulder impairment. (*Id.*) He found at step three, after considering section 1.00 of the Listings concerning musculoskeletal impairments, that Plaintiff does not have an impairment or condition of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ then determined that Plaintiff retained the residual functional capacity ["RFC"] to perform light work "with no lifting or carrying over 10 pounds; no over chest level work with dominate [sic] upper extremity [i.e., right arm][1], and the use of non-dominate [sic] upper extremity [i.e., left arm] to assist dominate [sic] upper extremity [i.e., right arm]". (Tr. 12-13). The ALJ found that Plaintiff had no severe mental health impairments and no "limitations due to mental health problems. . . ." (*Id.* 19.) He also found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms"; however, "Plaintiff's "statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are not supported by the evidence of record. (*Id.* 17.) The ALJ does not explain as to this finding what symptoms he is referring to.

---

[1] The Commissioner believes that the ALJ meant to state "no over chest level work with *non-dominant* upper extremity." (Def.'s Resp. Br. at 8.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 19.)  After considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found at step five that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (*Id.* 20.)  Accordingly, he found that Plaintiff was not disabled under the Act.  (*Id.*)

The Appeals Council declined Plaintiff's request for review on July 14, 2011.  (Tr. 1-3.)  Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ did not correctly assess his mental impairments or weigh Dr. Vega's mental health opinion.  He also argues that the ALJ's decision at step five is not supported by substantial evidence as he should not have found Plaintiff capable of performing the representative jobs identified by the vocational expert.  In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free of reversible legal error.

II.  ANALYSIS

  A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

  B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

    1. <u>The Assessment of Plaintiff's Mental Health Impairments</u>

      a. <u>The Special Technique for Assessment of Mental Health Impairments</u>

Plaintiff first argues that the ALJ erred at step two in the evaluation of Plaintiff's mental health impairments as he failed to follow the special technique required under the regulations. Under that technique, the ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment[ ]" and "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment[.]" 20 C.F.R. § 404.1520a(b)(1).

If the ALJ finds a medically determinable impairment, he is then required to rate the degree of the claimant's functional limitations caused by those impairments in the areas of activities of daily living; social functioning, concentration, persistence, or pace; and episodes of decompensation. *Stokes v. Astrue*, No. 07-5046, 2008 WL 1766788, at

*2 (10th Cir. 2008) (unpublished) (citing 20 C.F.R. §§ 404.1520a(c), (d)(1-2)). "The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments 'meet[] or [are] equivalent in severity to a listed mental disorder' at step three." *Id*. (quotation omitted). The ALJ's written decision must incorporate his pertinent findings and conclusions. 20 C.F.R. § 404.1520a(e)(3).

      Here, the ALJ did not evaluate Plaintiff's mental impairments at step two. Indeed, the only step two analysis was a conclusion without any explanation that Plaintiff has only a severe left shoulder impairment. (Tr. 12.) However, the ALJ did discuss Plaintiff's mental health impairments later in the decision when evaluating Plaintiff's RFC and credibility. (*Id*. 13-19.) While most of that discussion relates to Plaintiff's left shoulder, the ALJ also discussed in a cursory way Plaintiff's mental impairments and concluded that "[n]o severe mental health impairments are found in this case." (*Id*. 19). In so finding, the ALJ gave no weight to the mental health assessment by Dr. Vega (*id*. 17)—a psychologist who examined Plaintiff, made diagnoses and medical findings as to his mental impairments, and assessed moderate to extreme limitations on work-related activities as a result of same. (*Id*. 419-25.)

      Despite the ALJ's discussion of the evidence and the fact that the ALJ did ultimately find that the mental health impairments were not severe, I still find the ALJ's decision was deficient as he did not properly analyze the mental health evidence in accordance with the special technique. He did not properly evaluate Plaintiff's "pertinent symptoms, signs, and laboratory findings" to determine whether Plaintiff had a

medically determinable mental impairment" or specify what, if any, "symptoms, signs, and laboratory findings" substantiate the presence of such impairment. 20 C.F.R. § 404.1520a(b)(1). This first step of the "special technique" is not concerned with severity but simply whether there is a medically documented impairment.

In this case, Plaintiff was diagnosed with multiple mental impairments by Dr. Vega, Dr. McIntosh, the treatment providers at High Plains Community Health Center, and Southeast Mental Health. These diagnoses included depression, panic disorder and pain disorder, and anxiety. The record also contained symptoms and signs that substantiated the presence of such impairments. For example, Dr. Vega found in his mental status examination that Plaintiff's "[a]ffect was blunted, with a depressed and anxious mood". (Tr. 421.) Treatment records from Southeast Mental Health Services noted as a justification for further treatment that Plaintiff has "[s]erious symptoms, frequent anxiety attacks, moderate to severe depression." (*Id.* 399.) The ALJ's failure to properly consider this evidence and making the findings required by the special technique is error that requires a remand. *Hill v. Sullivan*, 942 F.2d 972, 975 (10th Cir. 1991) (since the record contained evidence of a mental impairment that impacted the plaintiff's ability to work , the Commissioner "was required to follow the procedure for evaluating the potential mental impairment set forth in the regulations and to document the procedure accordingly"); *see also Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) ("[t]he ALJ's failure to consider Ms. Salazar's borderline personality disorder, singly and in combination with her other impairments, requires that we reverse").

Further, the ALJ was required to analyze the degree of Plaintiff's functional limitations caused by those impairments *before* addressing whether Plaintiff's mental impairments were severe. *Grotendorst v. Astrue*, No. 09-2132, 2010 WL 1049791, at *4 (March 22, 2010) (unpublished). The ALJ did not do this. While the ALJ did note that the state agency physician assessed only mild restrictions (Tr. 19), he did not state what weight he gave to that assessment or whether he agreed with the assessment. I "cannot simply presume the ALJ applied the correct legal standards in considering [the state agency physician's] opinion. *Wade v. Astrue*, No. 07-6154, 2008 WL 193236 (10th Cir. Jan. 23, 2008) (unpublished).

Also, the ALJ appeared to base his finding that the impairments were not severe on the fact that Plaintiff was not treated during the relevant period. (Tr. 17, 19.) This was also error. As noted in *Grotendorst*:

> . . . . the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations. Thus, the ALJ failed to follow the regulations in reaching her determination that Ms. Grotendorst's mental limitations were not severe at step two of the sequential evaluation.

*Id.*

Based on the foregoing, I find legal errors in connection with the ALJ's assessment of Plaintiff's mental impairments. These errors require a remand of the case for a proper assessment. This is not a situation where Plaintiff is simply asking the Court to reweigh the medical evidence, as argued by the Commissioner.

### b. The ALJ's Weighing of Dr. Vega's Opinions and Other Medical Evidence

Plaintiff also argues that the ALJ failed to properly weigh Dr. Vega's opinions. Dr. Vega was a consulting psychologist who examined Plaintiff at her attorney's request. He found that Plaintiff was "significantly depressed, anxious, suffering from chronic pain." (Tr. 423.) He further found that Plaintiff's "condition at the present time would seem to be one where he would have difficulty in meeting demands of competitive employment", and noted that Plaintiff was "encouraged to seek out mental health treatment for his depression and anxiety." (*Id.*)

In connection with his report, Dr. Vega provided a functional assessment of Plaintiff's mental impairments, finding that Plaintiff had moderate to extreme limitations in many areas of mental functioning. Among other things, he indicated that Plaintiff had "marked" (i.e., severely limited) or "extreme" (i.e., "no useful ability") limitations since 2006 in understanding and memory, sustained concentration and persistence, and adaptation. (Tr. 424-25.) If Dr. Vega's functional limitations had been accepted, the vocational expert opined that all competitive employment was eliminated. (*Id.* 38-39.) As discussed previously, the ALJ gave "no weight" to this assessment. (*Id.* 17.)

Turning to my analysis, an ALJ is required to evaluate a medical opinion from a non-treating physician using the same factors applicable to treating physician opinions. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ need not "apply expressly" each factor in evaluating opinion evidence, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), but the record must reflect that the ALJ actually considered the

-8-

factors. *Andersen v. Astrue*, 319 F. App'x 712, 719 (10th Cir. 2009) (unpublished). As long as the ALJ provides "good reasons in his decision for the weight he gave" to the medical opinion, that is all that is required. *Oldham*, 509 F.3d at 1258.

Here, the ALJ obviously did not expressly discuss the relevant factors. Thus, the issue becomes whether he provided good reasons in his decision for the weight he gave to Dr. Vega's opinions. Accordingly, I turn to the reasons expressed by the ALJ in giving no weight to Dr. Vega's report.

The ALJ first found that Dr. Vega's opinions should be rejected because "[t]here are no office or treatment notes supporting this assessment and the examination does not support the limits given." (Tr. 17.) I find that this decision is not supported by substantial evidence. Dr. Vega did not treat Plaintiff and, as such, would not have treatment notes. The issue is whether his opinions were supported by objective medical evidence. *See* 20 C.F.R. § 404.1529(a). A psychological opinion may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Here, Dr. Vega stated objective findings that supported his opinion. As discussed previously, he found that Plaintiff's "[a]ffect was blunted, with a depressed and anxious mood" and also noted that Plaintiff was tearful in the course of the evaluation. (Tr. 421.) Dr. Vega also found that Plaintiff showed "poor attention and concentration", "had difficulty performing simple arithmetical calculations", had "some difficulty in remote memory", and that Plaintiff's "ability to abstract" was "more concrete". (*Id.*) He stated that the results of his evaluation supported his Diagnostic Impression." (*Id.* 422.)

Based on the foregoing, Dr. Vega's evaluation was obviously supported by observed signs and symptoms, and the ALJ's finding that his examination does not support the limits given is an improper lay judgment or speculation on the part of the ALJ. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own judgment for that of mental health professionals). Further, Dr. Vega made observations about Plaintiff's mental limitations which constitute specific medical findings. *Robinson*, 366 F.3d at 1083. The ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Indeed, in *Thomas v. Barnhart*, No. 04-7191, 2005 WL 2114163, at *4 (10th Cir. Sept. 2, 2005) (unpublished), the Tenth Circuit found that the ALJ's decision to reject a doctor's opinion because he based it, in part, on the plaintiff's responses to his psychological tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data." The same finding applies here.[2]

The Commissioner argues, however, that Dr. Vega "based his findings heavily on Plaintiff's subjective complaints." (Def.'s Resp. Br. at 12.) Indeed, he notes that "Dr. Vega devoted over two-and-one-half pages of his three-and-one-half-page narrative to Plaintiff's subjective complaints." (*Id.* at 7.) However, the practice of

---

[2] The fact that Dr. Vega did not administer objective psychiatric tests such as the Minnesota Multiphasic Personality Inventory or Beck Depression Inventory does not support the Commissioner's argument in support of the ALJ's decision to reject Dr. Vega's opinions, as his report is otherwise supported by objective psychiatric evidence as referenced above. Further, this is an improper post-hoc argument made by the Commissioner.

-10-

psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas*, 2005 WL 2114163, at *4. This was not a basis to reject Dr. Vega's opinions, particularly since his report was also supported by observed signs and symptoms, as discussed previously. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ( an ALJ may reject a physician's opinion "only on the basis of contradictory medical evidence *and not due to his or her own credibility judgments.* . . .) (emphasis in original).

The ALJ also found that Dr. Vega's evaluation is not consistent with or supported by the evidence of record. (Tr. 17.) The Commissioner argues in support of the ALJ's finding that none of Plaintiff's treating providers opined that he had any functional limitations from his mental impairments. He asserts that Ms. Bradley and Ms. Muller consistently opined that Plaintiff's depression and anxiety were well-controlled on medication, and that Plaintiff was psychologically normal on examination over a two-year period (*see, e.g.,* Tr. 318-42, 346-47, 383-393 – noting that mental and cognitive status was normal and an euthymic mood)). While Ms. Bradley and Ms. Muller were not "acceptable medical sources," they treated Plaintiff over a lengthy period. As such, the Commissioner argues that the ALJ could reasonably rely on evidence they provided about Plaintiff's mental functional limitations and reject Dr. Vega's more extreme, less-supported limitations.

There are flaws with the Commissioner's arguments. First, the ALJ did not actually state that he gave weight to Ms. Mullen's and/or Ms. Bradley's opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently

-11-

specific to make clear to any subsequent reviewer the weight that was given to a medical opinion). Thus, this appears to be an improper post hoc argument by the Commissioner.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

Second, there is no indication in the record that either Ms. Bradley or Ms. Muller were asked to provide a functional assessment of Plaintiff's mental impairments.  Thus, it is mere speculation to assume that they believed Plaintiff had no such limitations. *See Baker v. Barnhart*, 84 F. App'x 10, 17 (10th Cir. 2003) (unpublished) (where no doctor had defined claimant's functional limitations, there was "a lack of evidence about what she could do", and "the ALJ was not in a position to make any RFC determination.)[3]  Since their medical evidence was inadequate to determine their opinions on whether Plaintiff had functional limitations, the ALJ should have contacted these providers on the issue if he intended to rely on their findings.  *McGoffin*, 288 F.3d at 1252.

Third, the ALJ ignored the fact that Ms. Muller, a therapist at Southeast Mental Health, found that Plaintiff had "[s]erious symptoms, frequent anxiety attacks, moderate to severe depression" and assessed a GAF score of 47 consistent with this.  (*Id.* 399.)[4]

---

[3] For example, Ms. Bradley, a nurse practitioner, noted in assessing Plaintiff's neurological condition that his mental and/or cognitive status was normal.  This does not, however, provide any guidance as to whether she believed that Plaintiff's depression or anxiety functionally limited him in any way.

[4] The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.  *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)".  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. Dec. 8, 2004) (unpublished) (quoting DSM-IV 34).  The ALJ can not simply ignore this evidence, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains."  *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. June 28, 2007)

Given these findings, it is reasonable to assume that Ms. Muller may well have believed that Plaintiff had functional limitations which impacted his ability to work. *See Groberg v. Astrue*, No. 09-4203, 2011 WL 538870, at *5 (10th Cir. Feb. 17, 2011) (unpublished) (a GAF score of 50 "demonstrates that Groberg's mental impairments were serious and likely to have some effect on his ability to work). The ALJ erred in ignoring this evidence, particularly since it provides support for Dr. Vega's assessment that Plaintiff had serious symptoms which had an effect on Plaintiff's to work. *See Carpenter*, 537 F.3d at 1270 (holding that a doctor's opinion from an evaluation had to be considered "in light of the other record evidence as well as the factors set out in the regulations"). Indeed, an ALJ is required to consider all the evidence, and must "discuss 'the significantly probative evidence he rejects. . . .'" *Id.* at 1266 (quotation omitted).

Finally, the ALJ gave no weight to Dr. Vega's assessment because "it was based on a one time appointment with the claimant just two weeks prior to the hearing" and appears "to show the claimant's attorney trying to manage the case and evidence." (Tr. 17) (citing 5 of Exhibit 18F.) The latter finding is mere conjecture and is clearly not an appropriate basis to discount a medical opinion with medical findings. Further, this finding fails to take into account the fact that when a claimant is represented by counsel, counsel has duty "to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quotation omitted).

---

(unpublished).

The Commissioner also argues as to Dr. Vega that his report is somehow undercut by the fact that Plaintiff skipped several therapy sessions because he was doing well or was too busy, Plaintiff engaged in drug-seeking behavior and misused his prescription medication, and Plaintiff's increased treatment coincided with his denial of disability benefits and legal troubles. The Commissioner asserts that Dr. Vega's report never addressed any of this evidence. This evidence does not, however, allow the ALJ to discount medical findings Dr. Vega made based on his examination of Plaintiff. To the extent the ALJ questioned whether Dr. Vega's opinion would have been impacted by knowledge of this information, the ALJ should have contacted Dr. Vega to inquire about the issue, not simply discounted his opinions. *McGoffin*, 288 F.3d at 1252.

Finally, the Commissioner argues that the ALJ properly weighed state agency physician Dr. Frommelt's opinion. It appears he is arguing that the ALJ found Dr. Frommelt's opinion outweighed the opinion of Dr. Vega. However, the ALJ did not actually state what weight, if any, he assigned to Dr. Frommelt's opinions. (Tr. 19.) This is error, as the ALJ must explain the weight he is giving to a nonexamining source if he intends to rely on it. *Robinson*, 366 F.3d at 1084.[5] This should be clarified on remand. In doing so, the ALJ should keep in mind that the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all. *Id.* Further, if the ALJ relies on the opinions of a nonexamining doctor, those "opinions must themselves find adequate support in the medical

---

[5] I thus reject the Commissioner's argument that the ALJ's decision was sufficiently specific to make clear to any subsequent reviewers what weight have gave to the opinion and the reasons for that weight.

evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. Dec. 8, 2004) (unpublished).

### 2. The ALJ's Findings at Step Five

Plaintiff also argues that the ALJ's finding at step five is not supported by substantial evidence. I first note that the ALJ may need to reevaluate his findings at this step on remand anyway, as I have asked the ALJ to reassess Plaintiff's mental impairments.

Nonetheless, I also direct the ALJ on remand to clarify for the record whether the limitation on Plaintiff's non-dominant upper extremity (which is limited to assisting the dominant upper extremity (Tr. 37), would impact Plaintiff's ability to perform the occupations the vocational expert testified. Those occupations require occasional and/or frequent reaching, handling and fingering. It appears, then, that there may be a conflict between the VE's testimony and that of the DOT that was not sufficiently explored by the ALJt. This must be resolved on remand. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (when the findings of the VE are in conflict with the DOT, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability"); *see also Smith v. Barnhart*, 172 F. App'x 795, 799 (10th Cir. 2006) (unpublished). When the ALJ fails to elicit such an explanation, the case must be reversed and remanded to allow the ALJ to address the apparent conflict. *Haddock*, 196 F.3d at 1092.

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ erred in assessing Plaintiff's mental impairments and in weighing the evidence related to same.  I further find that the ALJ must resolve the apparent conflict between the vocational expert's testimony and the DOT in connection with the step five finding.  This case must be remanded to the Agency for further fact finding on these and the other issues discussed in this Order.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  March 21, 2013.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE